# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE TAYLOR, | ) | CASE NO.  3:16-cv-00847 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| JAMES HAVILAND, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Terence Taylor (hereinafter "Petitioner" or "Taylor"), challenges the constitutionality of his conviction in the case of *State v. Taylor*, Lucas County Court of Common Pleas Case No. CR-2010-3247.   Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 11, 2015. (R. 1).   On August 15, 2016, Warden James Haviland ("Respondent") filed his Answer/Return of Writ. (R. 10).   Petitioner did not file a traverse despite being given an extension of time until October 15, 2016.[1]  (R. 13).   This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.   For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

---

[1] Previously, Petitioner's motion for a stay and motion for appointment of counsel were denied. (R. 8, 11 13).

# I.  Summary of Facts

Factual determinations made by state courts are presumed correct in a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.")   The Sixth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Taylor's conviction as follows:

> {¶ 6} The evidence at trial was undisputed that Dorcas Stephens resided at a house located at 1520 Bell Avenue in Toledo, Ohio, on December 12, 2010.   A group of individuals, known to Stephens, came to her house.   Mark Ward, Derrick Pierce, John Winfield, Deirdre Taylor, and appellant arrived first.   Seatrieon Holmes and Andre Woodson arrived later.   Most of the group had known each other for many years.   Appellant and Deirdre Taylor are brother and sister. John Winfield is their half-brother.

> {¶ 7} Mark Ward had once resided in the neighborhood and was visiting friends. Ward had been sharing bottles of cognac with a group, walking through the neighborhood before he came to the Stephens house.  Dorcas Stephens testified that when the group arrived at the house they had been drinking and were loud and obnoxious. They waited on someone to bring more cognac to drink.

> {¶ 8} After a dispute between Ward and both Winfield and appellant over money and who paid for the bottles of cognac, John Winfield shot and killed Mark Ward at the residence. Stephens, appellant, and all others of the group were in the residence at the time of the shooting.

> {¶ 9} Key testimony against appellant was provided by two witnesses: Deidre Taylor (appellant's sister) and Dorcas Stephens.   Deidre Taylor testified that she saw John Winfield hand appellant a gun before the shooting and that appellant, with the gun in hand, "walked to the front door and shut the front door and said wasn't nobody leaving." Deidre testified further that Mark Ward responded and "said he wasn't no punk and wouldn't nobody take nothing from him."

> {¶ 10} According to Ms. Taylor, appellant then handed the gun back to John Winfield.   Winfield paced the floor talking and then Winfield and Mark Ward argued over who paid the most money for the alcohol.   "Next thing you know, John shot Mark."

{¶ 11} Dorcas Stephens testified that both appellant and John Winfield demanded money from Mark Ward.   According to Stephens, Mark Ward responded stating "ain't gonna take nothing from Baby Herc [Ward's nickname]," and then Ward tore his coat off and threw it on the floor.   Dorcas Stephens testified that she tried unsuccessfully to stop Ward from arguing further and heard appellant tell Ward "[M]an, you gonna give my brother his money or whatever, take his liquor and do what you want to do, don't keep disrespecting, don't disrespect my brother or whatever."

{¶ 12} Dorcas Stephens testified that she was easing towards the front door to leave the house and heard "steady arguing and then I heard, pow." She turned and saw Mark Ward still standing and John Winfield standing there with the gun.   She took off and heard more shots as she left the house.

{¶ 13} According to Deidre Taylor, Winfield then told her after the shooting "to go in Mark's pocket," and that when she complied and took money out, Winfield "snatched" the money out of her hands.   At the time of his arrest, appellant held $323 in cash on his person, including a one dollar bill in his wallet that was stained with Mark Ward's blood.

*State v. Taylor*, 2013 WL 6174919, 2013-Ohio-5182 at ¶¶ 6-13 (Ohio Ct. App. Nov. 22, 2013).

## II. Procedural History

### A.   Conviction

During its September of 2010 term, a Lucas County Grand Jury charged Petitioner with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(B) and (F), and one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1). (R. 10-1, PageID# 92-93, Exh. 1).   Both counts carried firearm specifications.[2] (*Id.*)

On June 21, 2011, a jury found Petitioner guilty of murder, a lesser included offense of aggravated murder, along with the attached firearm specification and guilty of aggravated robbery, along with the attached firearm specification. (R. 10-1, PageID# 109-110, Exh. 7).   The State dismissed the aggravated robbery conviction and associated firearm specification as it merged

---

[2] A motion by Taylor to dismiss the firearm specifications was opposed by the State and ultimately denied by the court. (R. 10-1, PageID# 96-108, Exhs. 3, 4, 5 & 6).

with the murder conviction. (*Id.*) The trial court sentenced Petitioner to an indefinite term of fifteen years to life in prison and a mandatory three-year sentence for the firearm conviction to be served consecutively. (*Id.*) The court also imposed a mandatory term of five years post-release control. (*Id.*)

**B.    Direct Appeal**

On August 15, 2011, Petitioner, through new counsel, filed a Notice of Appeal with the state appellate court. (R. 10-1, PageID# 111-112, Exh. 8). Petitioner raised the following assignments of error:

1.    Appellant's convictions were not supported by legally sufficient evidence.

2.    Appellant's convictions fell against the manifest weight of the evidence.

3.    The trial court erred by instructing the jury on the lesser included offense of Murder.

4.    The trial court failed to follow the proper procedure for merging allied offenses.

5.    The trial court erred by ordering Appellant to serve a mandatory fiver year term of post-release control.

(R. 10-1, PageID# 115-135, Exh. 9).

On November 22, 2013, the state appellate court affirmed in part and reversed in part. *Taylor, 2013-Ohio-5182* at ¶¶ 54-57. The state appellate court vacated the trial court judgment to the extent it "dismisses the conviction in Count 2 along with the firearm specification due to the counts merging" and remanded the case for resentencing on that count; remanded for resentencing because murder is an unclassified felony to which post-release was inapplicable. (*Id.*) The state appellate court noted that "[n]o *de novo* resentencing hearing is required on the error. 'Instead, appellant is simply entitled to a corrected judgment entry deleting any mention of postrelease

4

control.'" (*Id.*)   It affirmed "[i]n all other respects…" (*Id.*)   On November 27, 2013, Petitioner, through counsel, filed a motion for reconsideration, which the state appellate court denied on March 21, 2014. (R. 10-1, PageID# 182-184, 188-190, Exhs. 12 & 14).

On April 11, 2014, Taylor, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (R. 10-1, PageID# 191-192, Exh. 15).   In his memorandum in support of jurisdiction, Taylor set forth the following two propositions of law:

1.   Appellant was denied his 5th and 14th U.S. Amendment constitutional guarantee to due process … by a jury instruction on a lesser included offense of murder.

2.   Appellant was denied his 6th Amendment constitutional guarantee to effective assistance of counsel for appellate counsel's failure to raise trial counsel's ineffectiveness for failing to object to the trial court's sustaining a verdict of guilt for the lesser included murder.

(R. 10-1, PageID# 193-200, Exh. 16).   On July 9, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 228, Exh. 17).

**C.   Post-Conviction Relief**

On June 15, 2012, prior to the state appellate court's decision on direct appeal, Taylor, *pro se*, filed a petition to vacate his conviction and requested an evidentiary hearing due to "newly discovered facts."[3] (R. 10-1, PageID# 229-234, Exh. 18).   On October 1, 2012, the trial court found that the relief sought by Taylor was based on an attack on the verdict and sentence which was the subject of a pending appeal and, therefore, it lacked jurisdiction to consider Taylor's filings. (R. 10-1, PageID# 253-255, Exh. 23).   The court further noted that Taylor's petitions did not seek post-conviction relief. *Id.*

---

[3] Taylor filed motions for summary judgment and also a petition for the return of all seized funds. (R. 10-1, PageID# 235-242, 250-252, Exhs. 19, 20 & 22).

On October 16, 2012, Taylor, *pro se*, filed a notice of appeal with the state appellate court. (R. 10-1, PageID# 256-261, Exh. 24).   On February 19, 2013, the state appellate court dismissed the appeal as a result of Taylor's failure to file a brief in accordance with Ohio App. R. 18(C). (R. 10-1, PageID# 262-263, Exh. 25).

**D.   Resentencing After Direct Appeal**

On January 22, 2014, Taylor, through counsel, filed a motion in opposition to resentencing upon remand. (R. 10-1, PageID# 264-272, Exh. 26).

On August 7, 2014, the trial court held a resentencing hearing consistent with the appellate court's remand. (R. 10-1, PageID# 282-283, Exh. 29).   The trial court noted that a jury found Taylor guilty of murder, a lesser included offense of Count One (along with the attached firearm specification) and guilty of aggravated robbery along with the attached firearm specification. *Id.* The trial court determined that the aggravated robbery conviction was an allied offense to the murder conviction and merged for the purposes of sentencing only. *Id.*   The State elected to have Taylor sentenced for the murder conviction, for which the trial court imposed a sentence of 15 years to life in prison plus a three-year mandatory consecutive sentence for the firearm specification. *Id.*

On August 28, 2014, Taylor, through counsel, filed a Notice of Appeal with the state appellate court. (R. 10-1, PageID# 284-287, Exh. 30).   Taylor raised one assignment of error:

> 1.   The Trial Court erred in resentencing Appellant by reviving a count previously dismissed.

(R. 10-1, PageID# 288-300, Exh. 31).

On July 22, 2015, the appellate court found Taylor's assignment of error not well-taken and

affirmed the judgment of the trial court. (R. 10-1, PageID# 309-313, Exh. 33).

On August 19, 2015, Taylor, *pro se*, filed a notice of appeal to the Supreme Court of Ohio.

(R. 10-1, PageID# 314-315, Exh. 34).   Taylor asserted the following five propositions of law:

1.  Actual innocence. The facts show a clear claim of innocence of indicted charge(s).

2.  Defendant was placed in jeopardy of two distinct crimes but had notice of only one. Defendant's constitutional rights of Section 10 of Article I of the Ohio Constitution was violated.

3.  Appellant's due process rights were violated when appeals court severance Appellant's allied offenses.

4.  Defendant was placed in jeopardy when the appeal court remanded his case back for resentencing after a *nolle prosequi* on the underlying offense.

5.  Ineffective assistance of counsel. Defendant's appeal counsel was ineffective when he failed to assert defendant's above stated claims 1, 2, and 3 violating defendant's Constitutional rights of Section 10 Article I of the Ohio Constitution and the Sixth Amendment of the U.S. Constitution.

(R. 10-1, PageID# 316-330, Exh. 35).

On November 10, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 331, Exh. 36).

**E.    Federal Habeas Petition**

On April 11, 2016, Taylor filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief:[4]

> **GROUND ONE**: Actual innocence – Appealee failed to legally persent sufficient evidence to sustain the charges against Appellant, and Appellant conviction fell against the manifest weight of the evidence.
>
> *Supporting Facts*: DNA, and state witness (Seatrieon Holmes), testimony of the gun and other state witness testimony not corroborating and the testimony of

---

[4] The grounds for relief and supporting facts have been quoted verbatim and, therefore, grammatical and spelling errors have not been corrected.

Meghan Clement who work in forensic identify testing and the Det. Chad Culpert who testified to not being a blood spatter expert but his testimony was taken as creditable.

**GROUND TWO**: The trial court erred by instruting the jury on the lesser included offense of murder.

*Supporting Facts*: I was indicted for agg. murder and agg. robbery but the trial court instructed on the lesser included offense of murder(B) under the complicity statue and thats what the jury convicted me of.

**GROUND THREE**: The trial court erred when it sentenced me.

*Supporting Facts*: Inappropriate merger.

**GROUND FOUR**: Defendant was placed in jeopardy when appeal court remanded my case back for resentencing after a *nolle prosequi* on the underlying offense.

*Supporting Facts*: Reprosecution on a charge I have been tried on once is double jeopardy.

(R. 1, PageID# 5-10).

## III. Exhaustion and Procedural Default[5]

### A. Exhaustion Standard

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.

---

[5] Respondent concedes that the Petition was timely filed. (R. 10, PageID# 57).

1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

### B.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).   A claim may become procedurally defaulted in two ways. *Id.*   First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).   If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[6] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).   If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).   This second type

---

[6] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135.   Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

of procedural default is often confused with exhaustion.   Exhaustion and procedural default, however, are distinct concepts.   The Antiterrorism and Effective Death Penalty Act's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.   Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*   In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*   Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).   Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).   A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at

138-39.   "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*   Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).   Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough.   A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent asserts that the grounds one, two, and three of the petition are defaulted. (R. 10, PageID# 70-75).   Petitioner did not file a traverse and does not address Respondent's argument that several grounds for relief are defaulted.   They are addressed out of order below.

### 1. Grounds Two and Three: Lesser Included Offense Jury Instruction and Inappropriate Merger

In his second ground for relief, Petitioner argues that the trial court erred by instructing the jury on the lesser included offense of murder when he was indicted for aggravated murder. (R, 1, PageID# 7).   In his third ground for relief, Petitioner asserts that the trial court erred when it sentenced him due to "inappropriate merger." (R, 1, PageID# 8).   Petitioner does not elaborate on this ground for relief. Respondent also contends that ground three is defaulted. (R. 10, PageID# 70-75).   While conceding that Taylor raised grounds two and three before the state courts, Respondent avers that Taylor did not fairly present such grounds to preserve a habeas corpus claim, because he did not raise a violation of federal law.[7]  (R. 10, PageID# 73-75).

The Court agrees that neither the contents of ground two nor of ground three were fairly presented to the state courts as distinct federal or constitutional claims.   As mentioned earlier, a petitioner can take four actions in his brief which are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton*, 349 F.3d at 877.   Nevertheless, it is also well-established that an "isolated allusion to constitutional rights to due process and a fair trial" does not afford adequate notice to the state courts that a Due Process Clause argument is being raised. *Katt*, 271 Fed. App'x

---

[7] Respondent argues that grounds two and three fail to present cognizable claims because they are based solely on alleged errors of state law. (R. 10, PageID# 61-65). The Court agrees, as it is well-established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)*; *accord Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. *2d* 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).

at 482.

A review of Petitioner's briefs before the state appellate court reveals no reference to any federal law with respect to grounds two or three. With respect to ground two, Petitioner's sole citation was to *State v. McCullough*, for the proposition that "[i]n determining whether an instruction on a lesser included offense is warranted, a court must first determine whether the offense in the requested instruction is a lesser included offense of the charged offense. If so, the court must then determine whether the evidence at trial reasonably supports both an acquittal on the offense for which the defendant has been indicted and a conviction on the lesser included offense." 2008 WL 5123960, 2008-Ohio-6384 at ¶61 (Ohio Ct. App. Dec. 8, 2008) (*citing State v. Smith*, 89 Ohio St.3d 323, 330-331, 731 N.E.2d 645 (Ohio 2000)). (R. 10-1, PageID# 132-133, Exh. 9). With respect to ground three, Petitioner's entire argument is two short paragraphs:

> Allied offenses must be merged for the purposes of sentencing following the state's election of which offense should survive. *State v. Huber*, 8th Dist. No. 93923, 2011-Ohio-62 P32. In this case, however, instead of merging the convictions together, the Trial Court instead dismissed the count of Aggravated Robbery.
>
> This creates a legal paradox. Appellant's conviction to Murder stated Appellant was complicit in Winfield causing the death of Ward as the proximate result of committing a violent felony of the first degree. However, now, there is no committed violent felony of the first degree.[8]

(R. 10-1, PageID# 133, Exh. 9).

As such, Petitioner did not rely upon federal cases or state cases employing a federal

_____

[8] The state appellate court agreed that the trial court failed to follow proper merger procedures and remanded because the aggravated robbery conviction was improperly dismissed. *Taylor*, 2013-Ohio-5182 at ¶¶46-54. The reinstatement of the aggravated robbery conviction remedied what appellate counsel characterized as a "legal paradox." Undoubtedly, both Petitioner and counsel had hoped the state court would find that the felony murder conviction should be dismissed due to the lack of an underlying felony conviction. Petitioner's state court filings, however, do not identify any federal constitutional violation stemming from the state court's remedy. To the extent ground three merely reiterates the double jeopardy argument raised in ground four, that claim has been addressed on the merits below.

13

constitutional analysis, did not phrase his assignments of error as violations of federal constitutional law or a denial of a specific federal constitutional right, and did not allege facts well within the mainstream of federal constitutional law when presenting grounds two and three. Therefore, both grounds two and three should be dismissed as defaulted for lack of fair presentation, because Petitioner did not attempt to raise these grounds in state court as claims based on clearly established federal law.

In addition, Petitioner has not set forth any cause or ensuing prejudice that would excuse his procedural default with respect to any of the above identified grounds for relief. Although Petitioner has stated that he is actually innocent, he has not drawn this Court's attention to any new, reliable evidence. (*See* Section IV-A, *infra*). For the reasons set forth above, Taylor's claims in grounds two and three remain defaulted, as he has failed to demonstrate any valid basis for excusing his default.

## 2. Ground One: Actual Innocence, Manifest Weight, and Sufficiency of the Evidence

Respondent asserts that ground one is procedurally defaulted, because Petitioner did not complete a full round of review before both the state appellate court *and* the Ohio Supreme Court with respect to any of the claims raised in ground one. (R. 10, PageID# 70-73).

In order for a federal habeas claim to have been considered "fairly presented" to a state's courts, the claim must have been raised before the state's highest court, as only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 115 L. Ed. 2d 640(1991). "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional

issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (*quoting O'Sullivan*, 526 U.S. at 845).   Respondent is generally correct, as Petitioner failed to raise any of the claims in ground one before the Ohio Supreme Court during his first direct appeal (prior to resentencing). (R. 10-1, PageID# 193-200, Exh. 16).

Nevertheless, the Court addresses ground one on the merits below to the extent it raises a cognizable claim.   The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).   The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the courts determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *accord Pritchett v. Berghuis*, 2016 U.S. Dist. LEXIS 165947 at n. 2 (W.D. Mich. Nov. 5, 2016) (observing that both the Supreme Court and the Sixth Circuit have indicated that a district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim in order to promote expediency); *see also Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

## IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.   *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).   The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal district court, however, may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at

410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

## A. Ground One: Actual Innocence, Manifest Weight, and Sufficiency of the Evidence

In ground one, Petitioner asserts that: (1) the State failed to present sufficient evidence to sustain his convictions; and, (2) his convictions were against the manifest weight of the evidence. (R. 1, PageID# 5.) The Court shall address only Petitioner's sufficiency argument, as manifest weight claims are not cognizable on federal habeas review.[9] *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Gibson v. Miller*, No. 5:15CV119, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27, 2016) ("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims").

Turning to the sufficiency claim, the United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

---

[9] As explained in a decision from the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio May 12, 2006) (*quoting State v. Martin*, 20 Ohio App. 3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (Ohio Ct. App. 1983)). A federal habeas court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," and, therefore, this Court cannot decide whether Taylor's convictions were against the manifest weight of the evidence. *Id.*

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original). "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

After setting forth the standard governing sufficiency of the evidence claims, the state

appellate court found no merit to Taylor's sufficiency claim, explaining as follows:

### Aggravated Robbery

{¶ 27} The murder conviction is based upon the underlying offense of aggravated robbery, a violation of R.C. 2911.01(A)(1). R.C. 2911.01(A)(1) provides:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶ 28} The aggravated robbery charge included an R.C. 2941.145 firearm specification. As to the firearm specification, the state was required to prove "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.

{¶ 29} The trial court instructed the jury on complicity with respect to the offenses charged in the indictment and to the lesser included offense of murder. R.C. 2923.03 provides:

### 2923.03 Complicity

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense;

{¶ 30} In *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), the Ohio Supreme Court identified the evidence necessary to support a conviction for complicity by aiding and abetting:

To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal

intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. *Id.* at syllabus.

{¶ 31} Appellant contends that the evidence is legally insufficient to show that he aided and abetted Winfield in committing aggravated robbery. Appellant argues the evidence shows that it was Deirdre Taylor who took money from Ward's body, not appellant and that the evidence does not show appellant either took Ward's coat or that he was ever in possession of it. Appellant claims that the evidence does not show that he committed any act in furtherance of the robbery by Winfield.

{¶ 32} Treating the testimony of Deirdre Taylor and Dorcas Stephens as true, the evidence showed that both appellant and Winfield had argued with Ward and demanded money from him before the shooting. The testimony also showed that appellant introduced a deadly weapon into mix, appellant having taken a gun from Winfield, stood at the only exit from the house with gun in hand, and told everyone not to leave the residence. According to Deirdre, appellant then gave the gun back to Winfield. After further argument with Ward over money involving both appellant and Winfield, Winfield shot and killed Mark Ward, took Ward's money, and left.

{¶ 33} In our view, the evidence at trial was sufficient to establish that appellant supported, assisted, encouraged, and cooperated with Winfield in committing a theft offense with a deadly weapon, a firearm. The evidence, if believed, established that appellant had displayed and Winfield brandished a firearm in committing the offense. Accordingly, we conclude that the evidence was sufficient to support appellant's conviction for aggravated robbery and to support the finding of the firearm specification.

### Felony Murder

{¶ 34} As previously discussed, felony murder, pursuant to R.C. 2903.02(B), provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Here the underlying felony on which the felony murder conviction is predicated is the R.C. 2911.01(A)(1) aggravated robbery of Mark Ward, a first degree felony. We have concluded that there was sufficient evidence to support the aggravated robbery conviction. R.C. 2901.01(9)(a) identifies aggravated robbery as an offense of violence.

{¶ 35} Appellant argues that the evidence failed to show that he knowingly aided and abetted Winfield in committing murder. However, as we discussed under Assignment of Error No. 3, the intent required for conviction of felony murder under R.C. 2903.02(B) is the intent to commit the underlying offense. *State v. Maynard*, 10th Dist. Franklin No. 11-AP-697, 2012-Ohio-2946, ¶ 17.

{¶ 36} The remaining elements of felony murder require a showing that appellant caused the death of Ward as a proximate result of appellant's committing or attempting to commit the aggravated robbery. "Under Ohio's felony murder doctrine, a defendant can be held liable for a death that results from the actions of his co-felon." *State v. Tuggle*, 6th Dist. Lucas No. L-09-1317, 2010-Ohio-4162, ¶ 100. The Second District Court of Appeals in *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002 WL 191582, *5 (Feb. 8, 2002) explained the proximate cause analysis:

> Under the "proximate cause theory," it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of Defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience. *Id.*; *State v. Bumgardner* (August 21, 1998), Greene App. No. 97–CA–103, unreported; *State v. Lovelace* (1999), 137 Ohio App.3d 206, 738 N.E.2d 418.

{¶ 37} Treating the testimony of Deidre Taylor and Dorcas Stephens as true, appellant was an active participant in the aggravated robbery and acted with knowledge of the use of a firearm to commit the offense.

{¶ 38} Construing the evidence most favorably to the state, we conclude that there was sufficient evidence to support a conclusion that the aggravated robbery was the cause in fact of Mark Ward's death and that his death was a direct, natural, and reasonably foreseeable consequence of the aggravated robbery. Accordingly, we conclude that the evidence was sufficient to support a conviction of appellant for R.C. 2903.02(B) felony murder.

*Taylor*, 2013-Ohio-5182 at ¶¶ 27-38.

Taylor's argument is rather undeveloped. (R.1, PageID# 5). Without any meaningful explanation, he references DNA, the testimony of Seatrieon Holmes, and challenges the credibility of Meghan Clement and Detective Chad Culpert regarding blood splatter. (*Id.*) Earlier in its decision, the state appellate court summarized the testimony of Deidre Taylor and Dorcas Stephens. *Taylor*, 2013-Ohio-5182 at ¶¶6-13. The Court has performed its own review of the

relevant portions of the trial transcript, and finds the state court's summary accurate. Notably, Ms. Stephens testified that Taylor and John Winfield[10] began arguing with the victim at her home over payment for a bottle of liquor, and Taylor began nudging and elbowing the victim to pay his brother. (R. 14-1, PageID# 849-857, Tr. 452-460). She saw Petitioner and Winfield go the kitchen, after which Winfield "came back flashing the gun." (R. 14-1, PageID# 868, Tr. 471). When Ms. Stephens protested the heated argument taking place in her home, Winfield told her to shut up "before you wrapped in plastic." (R. 14-1, PageID# 856, Tr. 459). She saw Winfield with a gun, heard gunshots, and fled the scene. (R. 14-1, PageID# 857-859, Tr. 460-462). Ms. Taylor, Petitioner's younger sister and Winfield's half-sister, testified that she was at Ms. Stephen's house when she saw Winfield hand Petitioner a gun. (R. 14-3, PageID# 1088-1089, 1091-102, Tr. 690-691, 693-694). Ms. Taylor stated that Petitioner proceeded to shut the door to the house and said nobody could leave. *Id.* She saw Petitioner hand a gun back to Winfield, and Winfield shot the victim. (R. 14-3, PageID# 1089-1090, 1093, Tr. 691-692, 695). Winfield instructed Ms. Taylor to retrieve any money from the victim's pockets; he snatched the money she retrieved from her hands. (R. 14-3, PageID# 1093-1095, Tr. 695-697).

The jury plainly credited the testimony of these witnesses, which was sufficient to substantiate all the elements necessary to sustain Taylor's convictions. Taylor's complaint that certain testimony should not have been deemed credible is beyond this Court's review, as it may not weigh the credibility of witnesses. Furthermore, his belief that forensic evidence was lacking or inconclusive is immaterial, as eyewitness testimony, on its own, is sufficient to convict. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 658-659 (6th Cir. 2008) ("[T]his Court has long held that the

---

[10] Ms. Stephens frequently refers to the Petitioner by the nickname "Little Man," and calls Winfield "Little Boy" or "Little John." (R. 14-1, PageID# 849-857, 865, Tr. 452-460, 468).

testimony of the victim alone is constitutionally sufficient to sustain a conviction.") (*citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *Williams v. Bauman*, 2015 U.S. App. LEXIS 23149 (6th Cir. Jan. 30, 2015) (finding the victim's testimony was sufficient to sustain defendant's convictions); *cf. Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) ("Circumstantial evidence alone is sufficient to support a conviction, and [i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.") (internal citations and quotation marks omitted). In addition, the state appellate court's opinion specifically noted that cash was recovered from Petitioner at the time of his arrest, which was stained with the victim's blood, further demonstrating his involvement in the aggravated robbery. *Taylor*, 2013-Ohio-5182.

Therefore, the Court finds that Petitioner's claim— that his convictions were not supported by sufficient evidence—to be without merit.

Also in his first ground for relief, Petitioner asserts that he is "actually innocent." (R. 1, PageID# 5). Such a claim, however, fails to provide a basis for habeas relief. "[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation . . . ." *LeGrone v. Birkett*, 571 Fed. App'x 417, 421 (6th Cir. 2014) (*quoting Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)). While actual innocence may overcome the expiration of AEDPA's

statute of limitations or allow the Court to consider a defaulted claim, "tenable actual-innocence gateway pleas are rare," *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) and a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Taylor, however, fails to draws the Court's attention to any new, reliable evidence (*i.e.* exculpatory scientific evidence or trustworthy eyewitness accounts) that would satisfy the *Schlup* standard.

To the extent Taylor seeks to assert a free-standing actual innocence claim in ground one, it should be dismissed as not cognizable.

**B.   Ground Four: Double Jeopardy**

In his fourth and final ground for relief, Petitioner argues that the reinstatement of his aggravated robbery conviction after his direct appeal resulted in double jeopardy. (R. 1, PageID# 10.)   Respondent disputes that the resentencing resulted in a double jeopardy violation. Respondent points out that Petitioner was convicted by a jury of both felony murder and aggravated robbery, and that the trial court's subsequent dismissal of the aggravated robbery conviction, rather than simply merging the counts for sentencing, was void under Ohio law. (R. 10, PageID# 84-86).

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.   The Supreme Court has ruled that the Double Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (internal quotation marks and citations omitted).

[The Double Jeopardy] clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Due Process Clause affords a criminal defendant three basic protections: (1) protection from a second prosecution of the same offense following acquittal; (2) protection from a second prosecution of the same offense following conviction; and (3) protection from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)).

*Galvan v. Prelesnik*, 588 Fed. App'x 398, 401 (6th Cir. 2014).

It appears to be Petitioner's theory that his conviction violates the first basic protection—a second prosecution for the same offense following acquittal. The state appellate court addressed the argument as follows:

{¶ 3} Appellant appealed his conviction. In *State v. Taylor*, 6th Dist. Lucas No. L11-1202, 2013-Ohio-5182, we upheld the jury's finding of guilt as to both counts. However, we found well-taken appellant's assignment of error that the trial court did not follow correct procedure when it dismissed the aggravated robbery count in its sentencing entry. Appellant argued that the dismissal of the aggravated robbery charge impacted his conviction for felony murder, since the victim's death occurred during the commission of the aggravated robbery. We disagreed, and held that the error with respect to the aggravated robbery count did not affect the murder conviction. Accordingly, we vacated the trial court's judgment to the extent it "dismisses the conviction in Count 2 along with the firearm specification due to the counts merging," and remanded the case for resentencing on that count. *Id*. at ¶ 54. Appellant's appeal of our decision to the Ohio Supreme Court was not accepted for review. *See State v. Taylor*, 139 Ohio St.3d 1471, 2014-Ohio-3012, 11 N.E.3d 1193.

{¶ 4} At the resentencing hearing on remand, appellant argued that it violated his double jeopardy rights to proceed with resentencing on the aggravated robbery count since that count had been dismissed by the state at the original sentencing hearing, after the jury had been empaneled. The trial court rejected appellant's argument, and proceeded to merge the felony murder and aggravated robbery counts and sentence appellant to the same prison term that was imposed at the original sentencing hearing.

{¶ 5} Appellant has timely appealed the trial court's judgment entry following the resentencing hearing, presenting one assignment of error for our review:

1) The Trial Court erred in resentencing Appellant by not dismissing the count of Aggravated Robbery, as doing so violated Appellant's right under the Fifth Amendment of the U.S. Constitution against being placed in Double Jeopardy.

{¶ 6} In support of his appeal, appellant presents the same argument that he raised at the trial court, namely that once the aggravated robbery count was dismissed after the trial, it had the same effect as an acquittal. Thus, double jeopardy applies.

### Double Jeopardy

{¶ 7} The double jeopardy clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Here, contrary to appellant's argument, double jeopardy is not implicated. Appellant is not facing a second prosecution for the offense of aggravated robbery as the jury has already found him guilty of that offense, and he is not being re-indicted on that charge. Similarly, he is not facing multiple punishments for the same offense as the trial court merged the aggravated robbery count with the felony murder count, and sentenced him only on the felony murder count. Appellant is simply being resentenced because the trial court erroneously dismissed the count "due to the counts merging." *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 27 ("[T]he determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. Thus, the trial court should not vacate or dismiss the guilt determination."). "The purpose of the Double Jeopardy Clause is to preserve for the defendant acquittals or favorable factual determinations but not to shield from appellate review erroneous legal conclusions not predicated on any factual determinations." *State v. Calhoun*, 18 Ohio St.3d 373, 377, 481 N.E.2d 624 (1985). Therefore, we hold that where a defendant has been found guilty of two or more allied offenses and the trial court erroneously dismisses one or more of the offenses at sentencing instead of merging them, double jeopardy does not preclude the defendant from being resentenced so that those offenses can be properly merged.

{¶ 8} Accordingly, appellant's assignment of error is not well-taken.

*State v. Taylor*, 2015 WL 4469045 2015-Ohio-2946, ¶¶3-8, *appeal not allowed*, 2015-Ohio-4633, ¶¶ 3-8, 143 Ohio St. 3d 1545, 40 N.E.3d 1181 (Ohio 2015).

While the prohibition against double jeopardy is clearly established, Petitioner has cited no authority suggesting that the reinstatement of his jury conviction after an appeal in the same case

results in a double jeopardy violation.   The Court has also reviewed Petitioner's brief before the state appellate court where he was represented by counsel.   In that brief, counsel asserted that "[o]nce the Trial Court erroneously dismissed the Aggravated Robbery count, the trial Court had no ability to resentence Appellant [and] [d]oing so violated Appellant's right against being placed in Double Jeopardy." (R. 10-1, PageID# 295-296, Exh. 31).   However, that brief is also bereft of any authority supporting the proposition that the reinstatement of a valid jury conviction violates double jeopardy where the trial court erroneously dismissed said conviction at sentencing instead of merging the conviction.[11]   "[T]he Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009).   In the case at bar, the jury did not acquit but rather *convicted* Petitioner of aggravated robbery.   Furthermore, Petitioner was not convicted of aggravated robbery in a subsequent proceeding, but merely had his jury conviction reinstated in the *same proceeding*.   As such, it cannot truly be said that he was ever retried.   In addition, while the trial court erroneously stated that it was dismissing the aggravated robbery conviction "due to the counts merging," (R. 10-1, PageID# 109, Exh. 7), such a dismissal was improper under Ohio law as determined by the state appellate court.[12]

Therefore, the state appellate court's determination was neither contrary to nor an unreasonable application of clearly established federal law, and ground four is without merit.

---

[11]  Petitioner's *pro se* brief before the Supreme Court of Ohio cites only state law when arguing double jeopardy. (R. 10-1, PageID# 316-330, Exh. 35).

[12] This Court is bound by the state court's interpretation of state law. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.")

### V.    Conclusion

For the foregoing reasons, it is recommended that Taylor's Petition be DENIED.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: December 21, 2017

<u>**OBJECTIONS**</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.    Failure to file objections within the specified time may waive the right to appeal the District Court's order.    *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**